IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS



FILED
OCT 11 2013
STEPHEN C. WILLIAMS
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 13-mj-7084-SCW |
| ) | |
| vs. ) | |
| ) | Title 18, United States Code, |
| TIMOTHY S. GRIESEMER ) | Sections 1591, 1594(a), and 2422(b) |
| ) | |
| Defendant. ) | |

## CRIMINAL COMPLAINT

I, David Wargo, Special Federal Officer with the United States Secret Service Southern Illinois Cyber-crime Unit, the undersigned complainant, being duly sworn, states the following is true and correct to the best of my knowledge and belief:

### COUNT 1

#### COMMERCIAL SEX TRAFFICKING OF A CHILD

On or about October 10, 2013, in Jersey County, Illinois, within the Southern District of Illinois,

**TIMOTHY S. GRIESEMER,**

defendant herein, did knowingly, in and affecting interstate commerce, attempt to recruit, entice, and obtain, by any means, a person knowing that the person had not attained the age of 18 years, and had not attained the age of 14 years, knowing that the person would be caused to be engaged in a commercial sex act, all in violation of Title 18, United States Code, Sections 1591 and 1594(a).

## COUNT 2

### INDUCEMENT OF A CHILD TO ENGAGE IN PROSTITUTION

On or about October 10, 2013, in Jersey County, Illinois, within the Southern District of Illinois,

### TIMOTHY S. GRIESEMER,

defendant herein, using a facility and means of interstate commerce, that is a cellular telephone, did knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in prostitution or any sexual activity for which the defendant could be charged with a criminal offense under Illinois law, being Aggravated Criminal Sexual Abuse, in violation of 720 ILCS 5/11-1.60(c)(1)(i), all in violation of Title 18, United States Code, Section 2422(b).

## AFFIDAVIT

I further state that I am a Special Federal Officer with the United States Secret Service Cyber-Crime Unit, and that this complaint is based on the following facts:

1. On October 9, 2013, a woman, herein referred to as CW-1, reported to the Jerseyville Police Department that she has been in a "purely sexual" relationship with a man whom she identified as TIMOTHY GRIESEMER for approximately two months. CW-1 reported that during a text message conversation between CW-1 and GRIESEMER on October 8, 2013, GRIESEMER told CW-1 that he would like to introduce a "younger girl" into their sexual acts. CW-1 reported that when she asked GRIESEMER how young of a girl, GRIESEMER responded: with the ages between ten and fourteen. CW-1 inquired of GRIESEMER how

2

they would get a girl that young to which GRIESEMER responded "we would just have to grab one." CW-1 stated that she reported this to the police because she was very concerned that GRIESEMER would hurt a child if he had the opportunity and because she knows that GRIESEMER has children of his own.

2. On October 9, 2013 at approximately 5:00 p.m, I, along with Major Roger Kirby of the Jerseyville Police Department interviewed CW-1 at the Jerseyville Police Department. The interview was audio and video recorded.

3. During the interview, CW-1 stated that since the October 8, 2013 text message conversation with GRIESEMER that she reported earlier in the day, she had engaged in another text message conversation with GRIESEMER in which she asked him more specific questions about his intentions. CW-1 asked GRIESEMER what he wanted to do with the young girl. GRIESEMER replied with a text message that specifically described how he wanted the two of them to engage in oral and vaginal intercourse with the child. CW-1 also reported that during the text message conversation she asked GRIESEMER several times whether he was really serious and GRIESEMER repeatedly replied that yes, he was serious. CW-1 stated that she told GRIESEMER during these text messages that she might be able to obtain a child for him but that he would have to do everything else. CW-1 reported that she received these text messages from telephone number 618-477-3903 which CW-1 stated is GRIESEMER's cellular telephone number. She stated that GRIESEMER has a "smartphone."

4. CW-1 had retained all of the text messages she had received from GRIESEMER on October 9, 2013 on her cellular telephone. "Screen shots" of the contents of

3

the text messages between CW-1 and telephone number 618-477-3903 were taken and CW-1's cellular telephone has been retained for forensic analysis.

5. CW-1 stated that she would continue to assist in the investigation.

6. On October 10, 2013 at approximately 10:30 a.m., I, along with Major Roger Kirby and other agents from the United States Secret Service, met with CW-1 at her apartment located in Jerseyville, Illinois. CW-1 had a female friend, herein identified as CW-2, at the apartment whom had come to visit CW-1. I was informed that GRIESEMER knows CW-2 and that CW-2 has a female child who is approximately 9 years old.

7. The decision was made to have CW-1 send GRIESEMER a text to tell him that CW-2 was visiting and that CW-2 might allow him to engage in sexual activity with her daughter if she received some money. Specifically, CW-1 sent a text message to GRIESEMER stating that "CW-2 said if you want to do anything it will cost you because she's broke." GRIESEMER sent a text message in response asking how much. CW-1 suggested an amount of $150-200. GRIESEMER replied in a text message which stated: "I'll have it but I'm not paying till it's over. And if it goes smooth and I get what I want I'll pay the 200$ an if not I'll give what I think is fair if we don't get to do much."

8. During the text message conversation, GRIESEMER asked how old CW-2's girl was. CW-1 replied that she is going to turn 9 years old in two days.

9. CW-1 told GRIESEMER that CW-1 and CW-2 were concerned about hurting the child and stated that he needed to bring lubricant to ensure that the child is not

4

hurt. GRIESEMER responded in a text message in a way to indicate that he would take measures to not hurt the child.

10. CW-1 also sent a text message to GRIESEMER indicating that if he intended to have vaginal intercourse with the child he needed to bring a condom.

11. Throughout the text message conversation, GRIESEMER insisted that CW-2 have a conversation with the child to tell her what was happening to ensure that the child would be "ok" with it and not later tell what had occurred. Specifically, GRIESEMER sent a text message to CW-1 which stated "she [CW-2] needs to tell her what I'm going to do, what you're going to do and why she can't talk, cause if she does we're all going down! I don't want that." Additionally, GRIESEMER stated in a text message: "she [CW-2] better make sure she doesn't talk! Or we're all going to jail!" As well as a test message which stated: "make sure you hear what she tells her .. Let me kno before 5. I'm excited..."

12. GRIESEMER agreed to meet with CW-1 and CW-2 at CW-1's apartment located at 1009 Prairie Street, Jerseyville, Illinois at approximately 6:00 p.m. after GRIESEMER got off of work.

13. At approximately 5:00 p.m., GRIESEMER requested a photograph of CW-2's child. CW-1 responded that CW-2 did not want a picture of her child "out there" so she did not want to send a picture. GRIESEMER responded that it he did not get a picture, he was not going to go to the apartment.

14. At approximately 5:30 p.m., GRIESEMER sent a text message to CW-1 asking her to call him on the phone.

5

15. CW-1 called cellular telephone number 618-477-3909 and spoke to GRISEMER. During the conversation, CW-1 and CW-2 both spoke to GRIESEMER and told him that CW-2 was scared to have a picture of her child on the internet so she did not want to send a picture. After that telephone conversation, GRIESEMER agreed to meet at CW-1's apartment.

16. At approximately 6:00 p.m. on October 10, 2013, I observed a white male subject approach the apartment complex. The white male appeared to be GRIESEMER, based upon a booking photograph that I had viewed.

17. The white male knocked on the door of apartment and CW-2 opened the door and the male, who was later positively identified as TIMOTHY S. GRIESEMER, entered the apartment. Once inside the apartment, CW-2 asked GRIESEMER if he had the money. GRIESEMER stated that he would give her the money when he was done. CW-2 then stated to GRIESEMER: " you're going to [have sex] with my daughter, I want my money." GRIESEMER again said that he would give her the money when he was done.

18. GRIESEMER then walked down the hall of the apartment and opened the door of CW-1's bedroom. I, along with United States Secret Service Agents DEREK DAVIS and CHRISTOPHER WILLIAMS and MAJOR ROGER KIRBY were inside the bedroom and placed GRIESEMER under arrest at that point..

19. Upon GRIESEMER'S arrest, an Apple iPhone, Model A1387, with the markings "Assembled in China," one unopened condom, two bottles of personal lubricant, one small blue vibrator, and $311 in United States Currency was seized from his person and taken into evidence.

20. GRIESEMER was interviewed at the Jersey County Sheriff's Department by myself and Agent Williams. The interview was audio and video recorded. GRIESEMER was given his Miranda rights and he agreed to speak to us. During the interview, GRIESEMER stated that the text message conversation between him and CW-1 was "fantasy role playing" and that he was not going to actually engage in sexual acts with the child. When asked if he thought the child would be at the apartment when he arrived, he stated he did know the child would be there, but thought she would just be sleeping in another bedroom while he engaged in sexual activity with CW-1. GRIESEMER was asked about the $311 in cash and other items he had in his pockets when he arrived. GRIESEMER stated that he brought those items to use in his sexual activity with CW-1 and that he brought the money because he was just going to give CW-1 and CW-2 a loan because they are always broke and asking him for money. He stated that he had stopped at his other girlfriend's house located in Jerseyville, Illinois on his way to CW-1's apartment to pick up all of the items. Specifically, he said he got more cash while at the house because he does not usually carry that much money around with him.

21. During the interview, GRIESEMER stated that his cellular telephone number is 618-477-3903. GRIESEMER gave consent to search his cellular telephone. GRIESEMER stated that he had deleted all of the text messages because he did not want his other girlfriend to see them. Pursuant to GRIESEMER's consent, I viewed the text messages contained on his iPhone. All of the text messages between GRIESEMER and CW-1 had been deleted.

7

FURTHER AFFIANT SAYETH NAUGHT.

_____
David J. Wargo
Special Federal Officer
USSS Southern Illinois Cyber-crime Unit

STEPHEN R. WIGGINTON
United States Attorney

_____
ALI SUMMERS
Assistant United States Attorney

State of Illinois    )
                     ) SS.
County of Jersey     )

Sworn to before me and subscribed in my presence on this  11TH  day of  October , 2013, at East St. Louis, Illinois.

_____
STEPHEN C. WILLIAMS
United States Magistrate Judge

8